UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Elizabeth Parks,

        Plaintiff,

v.

Lebhar-Friedman, Inc.,

        Defendant.

Civil Action No. 04-7133 (DCP)(KNF)

---

[Defendant's motion for summary judgment denied.]

Dated: Oct. 2, 2008

Nathaniel B. Smith, for Elizabeth Parks, Plaintiff, Thelan Reid Brown Raysman Millstein, (Catherine McGrath) for Lebhar-Friedman, Inc., Defendant.

## OPINION

**POGUE, Judge:**[1] In this action, Plaintiff Elizabeth Parks ("Parks"), a senior magazine editor and writer, alleges that Defendant Lebhar-Friedman, Inc. ("Lebhar-Friedman") terminated her employment because of her age, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 ("ADEA") and corresponding New York state laws, § 296 of the New York State Human Rights Law and § 8-107 of the New York City Human Rights Law. Lebhar-Friedman seeks summary judgment prior to trial, asserting

---

[1] Honorable Donald Pogue, Judge, United States Court of International Trade, sitting by designation.

that, despite extensive discovery, Parks has failed to make an evidentiary showing sufficient to establish her prima facie case. In the alternative, Lebhar-Friedman asserts that summary judgment should be granted because it has articulated a legally sufficient, non-discriminatory reason for terminating Parks's employment, and Parks failed to make an evidentiary showing sufficient to establish that Lebhar-Friedman's reason for her termination was pretextual.

The court has jurisdiction over Parks's federal cause of action pursuant to 28 U.S.C. § 1331, among other provisions, and supplemental jurisdiction of the state law claims pursuant to 28 U.S.C. § 1367.

For the reasons explained below, the court finds that Parks has presented sufficient evidence to survive summary judgment and thus denies Lebhar-Friedman's motion.

## BACKGROUND

Trade journal publisher Lebhar-Friedman is a family-owned and closely-held corporation primarily run by Roger Friedman, its president and principle shareholder. Parks worked for Lebhar-Friedman for twenty-seven years: from July 11, 1976 to June 23, 2003. When she was terminated at age sixty-two, Parks held the position of senior editor and writer, and, since January, 2002, had authored the "Beauty" column in Drug Store News, a Lebhar-Friedman publication.

Parks claims she was terminated because of her age, in that

Lebhar-Friedman developed a focus on beauty and health images in its stories and preferred young editors and writers. If female editors and writers no longer possessed the image that Lebhar-Friedman sought to present, Park asserts, such women were no longer considered company assets.

It is undisputed that, shortly after Parks's March 2002 assignment to the Beauty column, Kevin Kennedy – Lebhar-Friedman's senior manager — directed the human resources department to "set in motion" a "scenario" to terminate Parks.

That scenario played out. On March 19, human resources staff member Marvlieu Hall forwarded an e-mail to her subordinate, Stacy Smith, directing Smith to prepare for Parks's termination. Smith responded five days later, concerned that firing Parks because of a reduction in force could subject the company to a lawsuit. On March 26, Smith confirmed in an e-mail that "it was agreed" that Lebhar-Friedman would not fire Parks as part of a reduction in force; instead, Smith emphasized, "this is a performance issue." Smith also stated in the e-mail that Tony Lisanti, another member of Lebhar-Friedman's senior management, would speak to Mark Tosh, Drug Store News' executive editor, about putting Parks on a thirty-day performance plan. Following Lisanti's and Tosh's discussion of Parks, Tosh wrote in an April 4 memorandum to Lisanti and Smith that "[his] sense on [Parks] is that she currently is not producing the quality of work that [Lebhar-Friedman] expects of senior

3

editors, certainly not on a par with other Drug Store News and [its] senior editors."[2]

For the next fifteen months, Parks's supervisors documented what they allege to be her performance weaknesses. Meanwhile, Parks continued to write columns for Drug Store News. Despite the established practice of printing the author's photograph along with each column, Parks's photograph did not appear in the Drug Store News Beauty column for the February 18th, March 4th, March 25th and April 9th issues. When Parks's photograph did appear, the publication had already re-assigned her off the Beauty column. Approximately one year after Kennedy's first e-mail, and after issuing Parks a number of warnings, Lebhar-Friedman fired Parks for "business reasons" in June 2003.

## APPLICABLE STANDARD

A trial court must grant summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing

---

[2] After he enumerated purported examples of Parks's sub-par job performance, Tosh concluded that he "[did not] know if this . . . is the kind of things . . . [Lisanti and Smith] were looking for, but this is what [he] could put together late Thursday."

4

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

Accordingly, the party with the burden of proof must establish the necessary elements of her case by producing sufficient evidence for a rational jury to find in her favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 250-51 (1986). The moving party, however, has "the burden of showing that no genuine factual dispute exists." Carlton v. Mystic Transp., 202 F.3d 129, 133 (2d Cir. 2000). When determining whether a genuine issue of material fact exists, the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." Patterson v. County of Oneida, 375 F.3d 206, 219 (2d Cir. 2004); see also LaFond v. Gen. Physics Serv. Corp., 50 F.3d 165, 171 (2d Cir. 1995). If the movant does not demonstrate the absence of a genuine factual dispute, summary judgment must be denied.

## DISCUSSION

I. **Elements of a Claim under the Age Discrimination in Employment Act**

Under the ADEA, it is "unlawful for an employer . . . to

5

discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To analyze an ADEA claim, the court applies the familiar three-step burden-shifting framework as articulated in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973). <u>Jetter v. Knothe Corp.</u>, 324 F.3d 73, 75 (2d Cir. 2003).

Thus, Parks must first provide sufficient evidence to establish a prima facie case of discrimination. <u>Jetter</u>, 324 F.3d at 75 (citing <u>McDonnell Douglas</u>, 411 U.S. at 802). To establish a prima facie case for age discrimination, Parks must show that 1) she was within the protected age group, 2) she performed her duties satisfactorily, 3) she was discharged, and 4) the discharge occurred under circumstances giving rise to an inference of discrimination. <u>See</u> <u>Hernandez v. Kellwood Co.</u>, No. 99Civ.10015, 2003 WL 22309326, at *12 (S.D.N.Y. Oct. 8, 2003) (Swain, J.) (citing <u>McGuiness v. Lincoln Hall</u>, 263 F.3d 49, 53 (2d Cir. 2001)). If Parks succeeds in establishing her case, the court presumes "discriminatory animus" and Lebhar-Friedman has the burden to "articulate a legitimate non-discriminatory reason for the employment decision". <u>Jetter</u>, 324 F.3d at 75 (citing <u>McDonnell Douglas</u>, 411 U.S. at 802-03); <u>Reeves v. Sanderson Plumbing Prods.</u>, 530 U.S. 133, 142 (2000)("The burden . . . shifted to respondent to produce evidence that the plaintiff was rejected, or someone else

6

was preferred, for a legitimate, nondiscriminatory reason. This burden is one of production, not persuasion; it 'can involve no credibility assessment.'")(internal citations omitted). Finally, if Lebhar-Friedman can articulate such a reason, Parks then must show that this reason is in reality a "pretext" for discrimination. Jetter, 324 F.3d at 75-76 (citing McDonnell Douglas, 411 U.S. at 804-05).

> [T]he plaintiff -- once the employer produces sufficient evidence to support a nondiscriminatory explanation for its decision -- must be afforded the "opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." That is, the plaintiff may attempt to establish that he was the victim of intentional discrimination "by showing that the employer's proffered explanation is unworthy of credence."

Reeves, 530 U.S. at 143 (internal citation omitted). "[O]nce the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision". Id. at 147-48. As a result, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Id. at 147-48; see also Chapkines v. N.Y. Univ., No. 02CIV6355, 2005 WL 167603, at *9 (S.D.N.Y Jan. 25, 2005) ("An employer may be entitled to judgment as a matter of law if 'the record conclusively revealed some other, nondiscriminatory reason

7

for the employer's decision' or 'if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.'"). "Although intermediate evidentiary burdens shift back and forth under this framework, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Reeves, 530 U.S. at 143 (internal citation omitted).

> II. **Grounds for Lebhar-Friedmans's Motion for Summary Judgment**
>
> A. **Lebhar-Friedman's Argument that Parks has Failed to Make Out a Prima Facie Case of Age Discrimination**

Lebhar-Friedman does not dispute that it discharged Parks, or more specifically, that it discharged her when she was sixty-two years old and thus in the ADEA-protected age group. However, in support of its request for summary judgment, Lebhar-Friedman instead claimed, in its briefs, that Parks has failed to provide summary judgment evidence regarding the other two elements of her prima facie case, namely, that she performed her duties satisfactorily to meet Lebhar-Friedman's expectations and that the circumstances of her discharge give rise to an inference of discrimination.

> > 1. **Parks Made a Sufficient Showing that She was Adequately Performing Her Position at the Time of Termination.**

At oral argument, counsel for Lebhar-Frieman, with commendable frankness, acknowledged that Parks has provided sufficient evidence to show that she met the qualifications of a senior editor position at the time of her termination. See Def.'s Mem. at 27-33; see also Pl.'s Mem. at 23-24. See Schering Corp. v. Home Ins. Co., 712 F.2d 4, 9-10 (2d. Cir. 1983) (The Court should deny a motion for summary judgment if plaintiff "propounds a reasonable conflicting interpretation of a material disputed fact."). Lebar-Friedman's acknowledgement is well founded. It is the law of this Circuit that, in order to raise a material fact on job performance, "all that is required is that the plaintiff establish basic eligibility for the position at issue, and not the greater showing that he satisfied the employer." Slattery v. Swiss Reinsurance, 248 F.3d 87, 92 (2d. Cir. 2001). Moreover, it is error for a trial court to hold as a matter of law that a plaintiff lacked the "minimal qualification for a job whose duties he has been performing for seven years." Id. Here, Parks worked at the firm for more than twenty years and acted as a senior editor for a number of years. Accordingly, Parks has provided sufficient evidence to establish her qualifications for the job.

> 2. **Parks Made a Sufficient Showing that the Circumstances of Her Discharge Establish Grounds for a Discriminatory Inference.**

Lebhar-Friedman also argues that Parks failed to establish the fourth element of her ADEA claim, i.e., that the circumstances

under which she was terminated give rise to an inference of discrimination. This inference may be established if Parks can demonstrate that she was fired and replaced by a substantially younger worker. See O'Conner v. Consol. Coin Caterers Corp., 517 U.S. 308, 313 (1996). Lebhar-Friedman points out that not only did the company not replace Parks after her termination, it subsequently eliminated her position entirely in its organizational restructuring. See Def.'s Mem. at 11. To Lebhar-Friedman, Parks interpretation of events ignores the economic realities of the industry and the context in which the termination took place.

Parks, however, raises a genuine issue of material fact as to whether she was replaced by a substantially younger employee. According to Parks, Lebhar-Friedman initially transferred her duties to twenty-three year old Molly Prior. Parks has also submitted evidence that can reasonably be interpreted to support her claim that, three months later, Parks's work responsibilities were again transferred, this time to a newly-hired thirty-three year old, Michelle Kirsche, who Parks alleges to be less-qualified for the position than herself. As evidence, Parks notes an e-mail from Smith to Kenlon on April 23, 2002 stating "[w]e will replace [Parks's] position with someone else," suggesting that Lebhar-Friedman planned to replace Parks's position rather than eliminate it. See Opp. Exh. 9 at 26. In addition, Parks points to Kennedy's first e-mail discussing Parks's termination, which stated "[w]e

need to set the [Parks] scenario in immediate motion . . . please outline a rationale as to why [Prior's] services would be preferred over [Parks's]", suggesting that Parks would be replaced by twenty-three year old Prior. Third, Parks directs the court's attention to the following year's organizational chart dated October 24, 2003, that shows her name was replaced with Kirsche's name.

Considering these three pieces of evidence, Parks has demonstrated the existence of a genuine issue of material fact that she was replaced by someone substantially younger, giving rise to an inference of discrimination and adequately supporting the fourth element of her prima facie case. See Carlton v. Mystic Transp., Inc., 202 F.3d 129, 135 (2d Cir. 2000) ("[A] plaintiff has demonstrated an inference of age discrimination and thus established a prima facie case . . . where the majority of plaintiff's responsibilities were transferred to a younger co-worker, and shortly thereafter some of plaintiff's other duties were transferred to a newly hired younger employee.").

To be sure, Lebhar-Friedman's personnel communications and organizational charts may be subject to alternative interpretations. Drawing inferences in Parks' favor, however, in sum, Parks has introduced sufficient evidence show that there is a genuine issue of material fact concerning her prima facie case.

    B.    **Parks Provided Evidence that Lebhar-Friedman's Purported Reasons for Parks's Termination Was a Pretext and that Age was a Motivating Factor in the Decision.**

As noted above, once the plaintiff puts forth a prima facie case based on circumstantial evidence, the burden shifts to the defendant. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). The defendant must offer a legitimate, non-discriminatory reason for the termination. Woodman v. WWOR-TV, Inc., 411 F.3d 69, 76 (2d Cir. 2005). Once the defendant has articulated a legitimate reason, the plaintiff must "prove by the preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination". Weeks v. N.Y. State Div. of Parole, No. 00 CV 5865 SJ, 2002 WL 32096593, at *4 (E.D.N.Y. Nov. 25, 2002).

Lebhar-Friedman has articulated legitimate, non-discriminatory reasons for terminating Parks's employment and argues that Parks has no evidence that age discrimination was the reason behind her discharge. See Def.'s Mem. at 15. Lebhar-Friedman identifies Parks's level of performance as the reason for her termination, referring to her documented weaknesses such as "the quality of her writing, types of stories she was doing, her tendency to overwrite, and the need for heavy editing" cited by her superiors. See Def.'s Mem. at 17. In response, Parks argues that Lebhar-Friedman has propounded general and subjective reasons which "failed to produce a clear and specific explanation" for her termination. Nonetheless, Lebhar-Friedman has met its burden of production because it is only required to produce "evidence (*whether*

12

*ultimately persuasive or not)* of nondiscriminatory reasons." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993)(emphasis added). Since Lebhar-Friedman has met the minimal burden of production, regardless of ultimate persuasiveness, the burden shifts to Parks to show that the proffered reasons were a mere pretext for discrimination.

Parks, however, has provided sufficient evidence to satisfy her burden. See Pl.'s Mem. at 30-34.

> In Reeves, the Supreme Court . . . instruct[ed] that evidence of pretext, without more, may permit the trier of fact to reasonably infer that the employer "is dissembling to cover up a discriminatory purpose," so as to defeat summary judgment. Such an inference, the Supreme Court reasoned, is consistent with the principle that evidence of dishonesty may show "affirmative evidence of guilt," as well as with the rationale that "once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation.

Chapkines v. N.Y. Univ., No. 02CIV6355, 2005 WL 167603, at *9 (S.D.N.Y Jan. 25, 2005) (quoting Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 147 (2000); Schnabel v. Abramson, 232 F.3d 83, 90 (2d Cir. 2000)).

Lisanti's employment evaluation, presented one week before the termination, can reasonably be read to indicate that Parks by-and-large may have met company standards, even though the evaluation may also be subject to alternative interpretations. See Opp. Exh. 16. In addition, two weeks before the termination, Forbes wrote an apparently favorable memorandum to Parks's superior, indicating

that "the account absolutely loved [Parks's column on clip-on sunglasses] and couldn't stop raving about the accuracy of the interview". See id. Exh. 15. Further, the very letter advising Parks of her termination cited "business reasons", rather than job performance reasons, as the deciding factors. See Opp. Exh. 17. Finally on this issue, Parks provided e-mails from the human resources department that allegedly instruct "supervisors to 'look for' performance issues, to 're-read' published articles, and to 'come up' with documentation to justify" Parks's termination. See Pl.'s Mem. at 33. This evidence could be read to suggest that the quality of Parks's work performance was not genuinely at issue and casts doubt upon the legitimacy of Lebhar-Friedman's purported reason for her termination.

Parks also provides circumstantial evidence indicating that age may have been the motivating factor in her termination. She suggests that Lebhar-Friedman preferred young faces to accompany its new focus on beauty and youth and, for that reason, it terminated Parks because she no longer possessed those qualities. Parks emphasizes the fact that Lebhar-Friedman omitted her photograph from the beauty column -- a departure from the publication's customary practice of having a photograph appear with each column. When her photograph ultimately appeared in the issue, it appeared along with Molly Prior's photograph after Parks was reassigned off the beauty column. Parks also points to the fact

that Lebhar-Friedman hired only young women to fill the ranks of its reporters and editors from at least 2000 through 2003: Diane West (31), Molly Prior (23); Antoinette Alexander (26), Alicia Zappier (mid-20s) and Michelle Kirsche (33). See Parks Decl. ¶ 5. This evidence could reasonably be read to support the theory that Lebhar-Friedman started to prefer young women.

In sum, Parks provides evidence from which a reasonable jury could infer that Lebhar-Friedman intentionally discriminated against her based on her age. Accordingly, Lebhar-Friedman's motion for summary judgment is denied. The parties are directed to consult and, by November 4, 2008, to file a proposed order governing preparation for trial.[3]

It is SO ORDERED.

_____
Donald C. Pogue, Judge

Dated: Oct. 2, 2008
New York, New York

---

[3] An appropriate form may be found on this chambers' website.